Your honors, thank you. I'm Clayton Kaye. I represent Shannon Horita, the appellate in the instant case. We argue on appeal that the statute of limitations started to run on December 20th, 2005. The discreet event in which the employer advised Ms. Horita that she was terminated and the employer also advised Ms. Horita that any prior commitments of employment had been revoked as to her. Secondly... Can you just clarify that December 20th is the date of Baldwin's letter, correct? That's correct. What you just said, the letter, it doesn't appear in the letter. What it says is, as Mr. Achenbach informed you in his letter of September 28th, your position in human resources will be eliminated December 31st, 2005. Therefore, effective January 1, 2006, you will be laid off. Okay, now that's reiterating something that had been said earlier. Where is it that prior offers had been revoked and so on and so forth? The point that we are making, Your Honor, is that even if December 20th, 2005 date should be earlier in terms of when the statute of limitations run, the doctrine of equitable polling applies because in the meeting that was held on September 2nd, in which Mr. Achenbach spoke to the human resource staff, he told them several things. He told them, one, that the human resources would probably be outsourced. And, two, he told them that this decision was based upon an assessment done by an assessment group. And he further told them that they had received proposals from Altus and another vendor he did not name. Counsel, how could that help your client? Because there's a meeting on September 2nd at which certain reassurances are made. Don't worry about it if the department isn't eliminated, no problem, so on and so forth. But then on September 28th, after that meeting, the letter comes saying your job is ending. So doesn't that cut off any reasonable expectation based on the sort of oral assurances that preceded it? No. Well, let's assume that the- If I may, Your Honor. Well, let me sort of tease that out and then ask for your explanation. Because let's say it's a straight-up termination kind of case where someone says, oh, don't worry, you're doing fine. And then three weeks later, a letter comes saying, we've reconsidered, we've gotten more reports, whatever, you're fired. Why is it that you can rely on something that happened earlier that was oral when you get something later in writing that tells you the way it's going to be? Mr. Auschenbach, at the meeting on September 2nd, and it's stated in my client's declaration, paragraph 17, he stated that if human resources indeed was not outsourced but had remained within the employers, remained within KIUC, then these individuals whose jobs had been reduced in grade, one of which was Lucerino, they would get back their old jobs. So basically- So is termination subject to a condition subsequent? Yes, Your Honor. In effect? And what happened was that on December 13th- So what happened on December 20th that changed, that made it clear that the reinstatement option was now off the table? Because on December 13th, the reinstatement had occurred in that a person was selected to do the very task that had been done by Ms. Horita. It was as a human resource administrator back when she was doing it. So Ms. Horita at that point was made to understand that the reinstatement had occurred, that KIUC wasn't going to outsource the human resources function, and that her job would be given back to her. It wasn't until one- Did they offer the job back to her? They offered her another job. No, the job. No, what they did is- So they're still in default. That's right. And they remain in default. On December 13th, they announced that the human resources would not be outsourced. She expected her old job back on December 20th. Wait a minute. Was she told that she would have her old job back after the new appointment was made of another person? No, she was not. She was sent to termination notice. So the delay was chargeable to her, not against the company, right? No, it's not. It's not chargeable to her? Well- She can conduct her life any way she wants. She can go hire down the street if she can find another job. Your Honor, in the assertion of the doctrine of the equitable estoppel, we are arguing that she was told- Are you talking about tolling or equitable estoppel? You're talking about one and the same. They're not in the statute, though. Are they? I think it's pretty clear from the case law that has been issued by this court that it is a consideration. When it's raised, it is an issue that should be raised and decided by a jury and not by a judge on summary judgment looking at declarations. At no time in this case is there any contesting by the employer that this commitment was not made by Mr. Asherback. At no time did they say Mr. Asherback did not make this statement, did not make this commitment, that if you- So it seems to be your argument that no matter what happens subsequently, his statement sort of lives on forever. They could have sent her 15 letters saying, you're fired, you're fired, you're fired, we're never giving you your job back, we can't make ourselves any more clear, and you would still be here saying, yes, but he told me I'd have my job back. No, we're not saying that, Your Honor. What we are saying is that if Mr. Asherback or someone on his behalf states even if human resources stayed with the company, you're still fired. Well, you're saying that it has to be absolutely 100 percent in those words. You're sort of saying it has to be kind of magic words for the later written material to cut off the alleged oral commitment. We're not saying that it has to be an explicit repudiation. Certainly on December 20, when Karen Baldwin sent out that letter, a week before, the human resources was clear to everyone that it would remain within the employer. That's because they hired somebody to Ms. Herita's job before she got reduced in status? Yes, Your Honor. Okay, so they didn't hire somebody into the position she expected to be rehired into if they didn't outsource. She was hired at one level when she first went into human resources and then was downgraded. That's correct. Okay, and at that downgraded position, that's what she was in at the time. She had her conversation on September 2 and said, we're going to outsource the whole department, but if we keep it in-house, then you'll get this current job back. As I understand, on December 13, they hired somebody into her former HR job. And so she had, on December 13, that was a signal that HR was staying in and that her still open job was available to her to be hired into. And when the December 20 letter comes, now she knows, oh, guess what? They aren't going to rehire me. Where am I wrong in that? That they hired someone on December 13 that was doing the functions of the Human Resources Administrator, her former boss who had since left the employment. So in other words, the person hired on December 13 was going to be her supervisor. I see. Okay, well, all right. Now I understand. So you're saying that at that point, she, as of December 13, thought then Mr. Achenbach's promise was going to still be open for her, and only when she got the December 20 letter did she realize they aren't going to rehire. That's correct. That's your theory. Okay. Counselor, you're very close to out of time, and I did want to ask your view on the matter that we sent your order. Yeah, is there any reason in your view that that case is likely to affect the decision here? I think it may, Your Honor, and therefore we would agree that if the court in its wisdom wants to wait for the submission of this case, we have no objection to that. Okay, thank you. We'll hear from Ms. Gerard. Good morning, Your Honors. Tamara Gerard and Kendra Kawai, also present with me today, appearing on behalf of the Defendant Appellee Kawai Island Utility Cooperative. Today, Your Honor, we're addressing the issue of the specific incident which triggered the running of the statute of limitations, of course. And under Ricks, it is quite clear that the relevant issue is when the discriminatory decision was made and communicated to the plaintiff. In this case, it is absolutely clear that as of September 28, 2005, the plaintiff understood that her position was being eliminated. Okay, that may be true, but this is on summary judgment, so are you disputing that there was a Mr. Achenbach told her that if the decision to terminate, and it was not focused on her, it was focused on the HR department, correct? Correct. So when she was told that her job would be lost, it was because they were eliminating outsourcing. It wasn't a targeted act taken against her, per se. That is correct. And that would have been your defense if she had filed a lawsuit at that point. What discrimination? This is layoff. Okay, so do you dispute on summary judgment that we have to assume that Mr. Achenbach did say that if we don't outsource, we will bring you back to this job that won't be eliminated now, so you'll come back to that job? Correct. Okay, and is it then correct that when would she have known that that promise, that condition to the termination notice, when would she have known that Mr. Achenbach's promise was no longer valid? Well, I have two concerns about that. First, I don't believe that this can be characterized as a conditional termination. When would she have known, whatever we call it, when would she have known that Mr. Achenbach's representation then was no longer operative? I believe it's clear under RICS that the written notification that she received September 28th regarding whether to outsource. So if she had sued at that point, if she had filed her claim at that point, she would have claimed that there was a targeted dismissal at her because of race or gender. She would have then, and you would have not been responding that there's no final action here because Mr. Achenbach has told her that if we don't outsource, she'll get her job back, so that's our defense. No, I don't believe that we would have made that argument. I think it was absolutely clear her position was being eliminated. It was not conditional. Now, I need to stress also there was no claim for promissory estoppel ever asserted in this action. There was nothing like that, and so if there had been such a claim, maybe we would be dealing with somehow a different issue because it would be a different statute of limitations. Well, why would it be a claim for promissory estoppel? The question is a statute of limitations, okay? And so the issue is you've got the burden to show a statute of limitations, so I'm not sure why she would have to plead a claim for promissory estoppel on the theory that she's anticipating your statute of limitations defense. Because I don't believe there was any condition to the statement, your position is being eliminated. Well, we just agreed that Mr. Achenbach made a statement preceding the September letter that if the elimination of her position due to outsourcing was undone, she'd come back. And so why wouldn't she assume that when she gets a letter, there's been no decision not to outsource at that point, why wouldn't she assume that, okay, I've been told I'm going to be eliminated, I get a letter confirms it, when would she know, why would that letter tell her that anything had changed? Had they made a decision whether or not to outsource at that point? I don't believe there was any change regarding the decision of whether to outsource. Okay, so what was different between September 2nd and September 28th? She got the same message both times, your job is being eliminated. I don't believe there was anything different. Okay, but it was coupled in the first instance with a statement from the senior person, that if we change our mind about outsourcing, you'll get your job back. I don't believe that caveat is sufficient to render this something other than an employment action, which according to her was discriminatory. That's your argument. Now what about equitable? I understand your argument. Okay. I understand. So that's your argument as to why it's not a discrete incident. But what's your argument about why there isn't either an estoppel or a tolling here? Why would she think she needed to jump in and start a legal process when she'd been assured that this termination, this layoff decision, was a reversible decision? Was a reversible decision. Yeah, right. What would be her claim? She'd go into court and she'd file a claim. Termination. I think that if somebody's being told they're being terminated but that they might later be rehired, I think that they still can proceed with a claim. If you're under Rule 11 or you're under a pleading obligation, you would have to assess whether she would have a viable claim when it is an institutional layoff. It isn't targeted at her. That's the problem I'm having. The rule of this case seems to be that if you get a termination notice, which is a department-wide layoff, you have to file any claim you may think that you've been discriminated against, even when you know that the defense is going to be there's no targeted discrimination here. This is a systemic termination. We're laying everybody off. It only ripens into a viable discrimination claim when it becomes personal as to her as compared with anybody else. Well, I don't know that I agree with that approach. I think that if we view it as a situation where she could bring her claim at any point in time in the future once she realized that there was going to be no outsourcing, then there would be no real specific trigger. No, I don't think that's right. I think the point would be, and your point is, that the September 28 letter was the trigger because it communicated to her plainly and unambiguously that she was, no matter what decision was made about outsourcing, she was out of a job. I don't see that in the letter, but that's your position, right? That is correct. Okay, so if you wanted to cut it off and revoke Mr. Achenbach's promise, you could say this will happen regardless of whether we outsource or not. I mean, he had made that representation, so the utility could have undone that by explicitly saying that's no longer operative. Well, I guess I'm a little puzzled by this, because at the hearing on the motion for summary judgment, plaintiff's counsel acknowledged that she knew unequivocally that her position was being eliminated. There's no doubt about that. May I get in just to ask, because no one has talked about the October 5th memo yet, which seems to me to be, the September 28th letter is not in the record as I understand it, so we don't know exactly what the terms are, but the October 5th memo is, and it specifies that she may bid for any other vacancy only prior to being displaced on January 1, 2006. And it seems to me, I guess, if we looked at October 5th as being the triggering date instead of September 28th, where are we with regard to the 300 days? We're still well outside the 300 days. And let me also stress that the 300 days only applies for the Title VII claim. Plaintiff also asserted a state law claim which is bound by the 180 days, so I assume we're not really even raising that here, because there's nothing that would fall within 180 days. But if you focus, if you go back 300 days from the time when the charge was filed, what you get back to is November 29, 2005. What we really need to do is figure out whether or not there was some discriminatory act that took place within that limitations period, so something that happened after November 29, 2005. What plaintiff's counsel has pointed to is this December 20 memo. Now, I don't see a distinction between the December 20 memo and this October 5 memo. Because he says, and maybe so I think you should address it, he says that in the meantime, in the interval, they have taken an action that communicates to anybody in HR that you aren't going to outsource it. So when they now send the letter, she now knows that she is not going to get her HR job back. The best she can hope for is that she can bid for some other position within the utility, which is what was communicated in October 5. I'm not certain that what you just described is actually in the record. It is true that an employee, Jackie Caccero, was hired for a specific position. I think the title was HR coordinator, and I believe that is in the record. I believe what is also in the record is that the plaintiff conceded she did not want that position. It was not a position she was qualified for. No, but the point is, counsel, I'm just trying to understand, as this case is shaping up, we're saying that this plaintiff had a statute of limitations running against her, and she was out of court if she didn't, or out of the EEOC and ultimately out of court, if she didn't jump in there and file a lawsuit claiming discrimination when the circumstances are such that she's been told the reason for her termination is a systemic one. It applies to anybody in HR. Therefore, if she's going to file a claim, how is she going to prove discrimination when she's going to be met with the fact that everybody similarly situated, i.e., everybody in the HR department, has been terminated, they've outsourced it? Now the question is, does at some point she get indication that the qualifier on that, that if they change that systemic decision, she, Ms. Arita, will not be rehired. Now it becomes personal to her. She now knows that regardless. They've wiped out these positions. Now they've put the positions back in, and she's not going to get it. Now she has something to chew on that would cause her to think, wait a minute, why are they picking on me? Why are they changing their mind? Now she's got a viable claim, and that's what I'm trying to assess. We see lots of these Title VII cases. A lot of employers will use the defense. It's not personal to her. It's systemic. Well, she had an unusual claim because in addition to claiming that there was this disparate effect on people of her race and sex by elimination of this department, she also claimed that comments based on her race had been made, again, prior to that. So when I questioned her deposition, and I believe this is part of the record, she specifically said that actually she felt she was being discriminated back in June, which was many months prior to all of this. But, you know, we get those cases too. Fleeting statements in the workplace or don't become a hostile work environment and so on and so forth. I'm just trying to understand as a practical matter, legal matter, but what we are telling potential workplace plaintiffs that they must do when they get a termination notice coupled with a promise of rehire, reinstatement, whatever you want to call it, cancellation of termination, if the decision to eliminate the department is reversed. You're saying you must jump in and file a, you know, start the legal process just to protect yourself against the statute of limitations. That's the problem. Yes, and again, perhaps I'm being nitpicky, but my belief is that there is a big distinction between a promise of a rehire and an actual termination. And I think here she was clearly told about the termination. No question about that. Your time has run, but what is your view as to whether Lewis might or might not have any bearing on our decision here? I believe that Lewis is distinguishable from the facts of this case. Lewis involved a disparate impact failure to hire claim brought by a class of firefighters. And I think there was some uncertainty in that case as to what the discriminatory act was, whether it actually involved the taking of the test, the administering of the test, and subsequent classification of people into groups, and then the subsequent decisions to hire people outside of those groups. Well, why isn't that analogous to what plaintiff's counsel is trying to argue here? I mean, it's sort of, his argument is really, one way to look at it is that Riggs shouldn't apply or there's some stepping back from Riggs or something. And is it not possible that the Supreme Court will look at that whole problem of what you do when there's a statement of intention to do something and then later activity? Well, I think that Lewis is different because it wasn't clear cut. I think it was a lot less clear cut. And I think that when you have a failure to hire, as in that case, I think the people weren't entirely sure how it was going to apply to them. Because them, it was clear. They were given a notice that said, we're going to keep you on this list, and so you might be hired later. So I think it's a little bit different. And I also think that because it was a class of people, it was just a bit more confused. And I must also stress, I don't think that the grant of cert in that case necessarily indicates that there's going to be a stepping away from Riggs. Well, we don't know. We don't know. We don't know. But Lukofsky, cert was denied in Lukofsky, and I think Lukofsky is more clear cut, just as this case is more clear cut. There was a very clear notice that was given to the applicants that said, you know, you're not going to be hired, and so it was very clear. And, again, I believe that this is very clear. Your position is being eliminated, and I don't think that there's any way around that. The doctrine of equitable tolling and equitable estoppel were not argued below, and I don't feel that they're applicable to this case. Thank you, counsel. Thank you. Mr. McKay, you have some rebuttal time remaining. Yes, Your Honor. And my rebuttal is very brief, and I believe that the case of Delaware State College versus Riggs does not apply. But as the Ninth Circuit has ruled in the Aronson versus Crowns Element, which we cited, that you simply don't look at the dates. You must look at the circumstances. And in this case, Ms. Farida was told on September 2nd that her job would be eliminated, but if the outsourcing did not take place, she would get her old job back. Counsel, the district court in its decision says nothing about equitable tolling and nothing about equitable estoppel. Is it a fair reading of the record that those issues were not presented to the district court? Those issues were presented and were argued in oral argument to the court, as Your Honors have received my brief, in which we cited two portions of the transcript ordered by defense of the hearing. Did you present proposed findings to the district court that are part of the record? No, we did not propose findings. The judge wrote out his decision. And but I would point out that we argued and we pointed to the declaration of our client that stated what the contents of the meeting was on September 2nd. We also pointed out her state of mind on December 13th when she received notice that human resources would indeed not be outsourced. So it was her expectation that she would be restored to her old job back. And so the question really becomes, is it reasonable? And we would say that it is reasonable to rely upon the commitments made by her boss, which her boss has not repeated until December 20th at a time when she was still drawing a paycheck from the company. Thank you, Counsel. We appreciate very much the arguments of both sides. This case is submitted on the briefs, or excuse me, submitted after argument and the briefing. We've got the briefs, too. And we will take a recess until about 11 o'clock.
judges: Beezer, Graber, Fisher